813 A.2d 325

HAMS OF SOUTHERN MARYLAND, INC. et al.,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY et al.

No. 1573, Sept.Term, 2001.

Court of Special Appeals of Maryland.

Dec. 23, 2002.

William R. Greer, Jr. (Devine, Fanning & Greer, P.A., on the brief) La Plata, for appellants.

Andrew J. Marter (Armstrong, Donohue, Ceppos & Vaughan, Chartered, on the brief) Rockville, for appellees.

Argued before KENNEY, KRAUSER, and PAUL E. ALPERT (Ret'd, specially assigned), JJ.

KENNEY, J.

Appellants, Hams of Southern Maryland, Inc. ("Hams"), Jonathan D. Duvall, and Kenneth P. Sullivan, challenge the decision of the Circuit for Prince George's County granting summary judgment in favor of appellees, Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, and Nationwide Property and Casualty Insurance Company.[1] Appellants present the following question, which we have re-worded:[2]

Did the circuit court err in granting appellees' motion for summary judgment based on Md.Code §§ 19–509 & 19–510 of the Insurance Article?

We answer "no" and affirm the decision of the circuit court.

### Factual and Procedural History

The material facts in this case are not in dispute. Appellee, Nationwide Mutual Insurance Company, issued a business automobile insurance policy (the "policy") to Hams for a 1996 Toyota pickup truck (the "vehicle"), for the period between December 1997 through November 1998. The policy provided liability coverage of $500,000 per accident and uninsured/un-

---

**1.** Nationwide Mutual Insurance Co. was a named defendant on the docket sheet. Appellees' counsel, however, has informed us that Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Co., and Nationwide Property & Casualty Insurance Co. are the appellees in this appeal.

**2.** The statutory provisions discussed in this opinion were those in effect on June 20, 1998. Some provisions have since been amended.

derinsured ("UM/UIM") [3] coverage of $50,000 per incident. There was no written waiver by a Hams' representative authorizing the variation between the liability and UM/UIM coverage limits.

The vehicle was used by Jonathan Duvall, an officer and employee of Hams, for both business and personal purposes. On June 20, 1998, he was involved in an automobile accident while operating the vehicle for personal use. Kenneth Sullivan, who was not affiliated with Hams, was a passenger in the pickup truck. Both men suffered injuries that exceeded the tortfeasor's insurance coverage and surpassed the $50,000 per incident UM/UIM coverage that was available under Hams' policy.

On November 8, 2000, the appellants filed a complaint in the circuit court requesting reformation of Hams' insurance policy to increase the UM/UIM coverage to "equal that of the liability coverage." Appellants asserted that Maryland insurance law required insurers to notify the insured and obtain a written waiver when a policy's liability insurance coverage was not equal to its UM/UIM coverage. Because no such waiver had been obtained, appellants argued that Hams' UM/UIM coverage must be increased to equal the policy's liability coverage.

On February 26, 2001, appellees filed a motion to dismiss or, in the alternative, a motion for summary judgment, arguing

---

**3.** Md.Code (1997, 1998 Supp.), § 19–509 of the Insurance Article provides, in pertinent part:

(a) *"Uninsured motor vehicle" defined.*—In this section, "uninsured motor vehicle" means a motor vehicle:

(1) the ownership, maintenance, or use of which has resulted in the bodily injury or death of an insured; and

(2) for which the sum of the limits of liability under all valid and collectible liability insurance policies, bonds, and securities applicable to bodily injury or death:

(i) is less than the amount of coverage provided under this section; or

(ii) has been reduced by payment to other persons of claims arising from the same occurrence to an amount less than the amount of coverage provided under this section.

that Md.Code (1997, 1998 Supp.), § 19–510 of the Insurance Article ("IA") did not apply to commercial or business lines policies. Therefore, according to appellees, no written waiver authorizing the differing coverages was required.

Appellants responded to that motion and also filed a motion for summary judgment, which was denied by the court. Appellees then filed another motion for summary judgment on June 15, 2001, again arguing that the written waiver requirement did not apply to the policy at issue. The court held a motions hearing on September, 7, 2001, and granted appellees' motion for summary judgment, stating in part:

In any statutory interpretation [case] the Court must first look to the words of the statute to determine whether the statutory aim and objective is clear and unambiguous, and in that process the Court is entitled to consult the legislative history to determine the legislative purpose or goal.

The pertinent language in the statute in question, 19–509 and specifically 19–510, is the interpretation of "private passenger motor vehicle liability insurance."

I am persuaded primarily by the fiscal note submitted on behalf of MAIF regarding the difference in their personal lines coverage and commercial lines coverage and the subsequent amendment contained within the legislative history by the striking of "motor vehicle" and replacing it with "private passenger motor vehicle," that the intent of the legislature was not to have Sections 19–509 and 19–510 to apply to business or commercial lines policies but only to personal lines policies.

Finding that that was the intent of the legislature, I will then grant the defendant Nationwide's motion for summary judgment, finding that the plaintiff is not entitled to have this policy reformed to have the uninsured motorist liability limits be identical with the bodily injury liability limits absent any waiver by the insured of that right.

Appellants filed this appeal on September 27, 2001.

## Standard of Review

Summary judgment "is used to dispose of cases when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." *Okwa v. Harper,* 360 Md. 161, 178, 757 A.2d 118 (2000) (citations omitted). "A genuine issue of material fact is a factual dispute that is real and not imagined." *Schmerling v. Injured Workers' Ins. Fund,* 139 Md.App. 470, 483, 776 A.2d 80 (2001), *rev'd on other grounds,* 368 Md. 434, 795 A.2d 715 (2002). A material fact is one that would "affect the outcome of the case." *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985). "Summary judgment may not be defeated by a dispute as to a fact that is immaterial." *Schmerling,* 139 Md.App. at 483, 776 A.2d 80. "Neither general allegations of facts in dispute nor a mere scintilla of evidence will suffice to support the non-movant's position; there must be evidence upon which the jury could reasonably find for the moving party." *Fearnow v. Chesapeake & Potomac Tel. Co.,* 104 Md.App. 1, 49, 655 A.2d 1 (1995), *aff'd in part, rev'd in part,* 342 Md. 363, 676 A.2d 65 (1996).

When reviewing a court's decision on summary judgment, we "must review the facts, and all inferences therefrom, in the light most favorable" to the nonmoving party. *Lovelace v. Anderson,* 366 Md. 690, 695, 785 A.2d 726 (2001). "Evidentiary matters, credibility issues, and material facts which are in dispute cannot properly be disposed of by summary judgment." *Underwood–Gary v. Mathews,* 366 Md. 660, 685, 785 A.2d 708 (2001). Moreover, "[i]n appeals from grants of summary judgment, Maryland appellate courts, as a general rule, will consider only the grounds upon which the lower court relied in granting summary judgment." *PaineWebber Inc. v. East,* 363 Md. 408, 422, 768 A.2d 1029 (2001).

Accordingly, because there is no dispute of material fact, "our review is limited to whether the trial court was legally correct." *Lippert v. Jung,* 366 Md. 221, 227, 783 A.2d 206 (2001). We look to whether the court correctly interpreted and applied the relevant law to the uncontested facts. *Fister*

*v. Allstate Life Ins. Co.,* 366 Md. 201, 210, 783 A.2d 194 (2001). "As with all questions of law, we review this matter *de novo.*" *Id.*

The issue in this case is essentially one of statutory interpretation. The Court of Appeals "has stated many times 'that the cardinal rule of statutory construction is to ascertain and effectuate legislative intention.' " *State v. Green,* 367 Md. 61, 81, 785 A.2d 1275 (2001) (citation omitted). Our starting point is always the text of the statute. *Adamson v. Correctional Med. Servs.,* 359 Md. 238, 251, 753 A.2d 501 (2000). "[I]f the plain meaning of the statutory language is clear and unambiguous, and consistent with both the broad purposes of the legislation, and the specific purpose of the provision being interpreted, our inquiry is at an end." *Breitenbach v. N.B. Handy Co.,* 366 Md. 467, 473, 784 A.2d 569 (2001). The plain meaning rule is "elastic, rather than cast in stone[,]" and if "persuasive evidence exists outside the plain text of the statute, we do not turn a blind eye to it." *Adamson,* 359 Md. at 251, 753 A.2d 501 (citing *Kaczorowski v. Baltimore,* 309 Md. 505, 514, 525 A.2d 628, 632 (1987)).

"[I]n determining a statute's meaning, courts may consider the context in which a statute appears, including related statutes and legislative history." *Ridge Heating, Air Conditioning & Plumbing, Inc. v. Brennen,* 366 Md. 336, 350–51, 783 A.2d 691 (2001). "We may also consider the particular problem or problems the legislature was addressing, and the objectives it sought to attain." *Sinai Hosp. of Baltimore, Inc. v. Department of Employment & Training,* 309 Md. 28, 40, 522 A.2d 382 (1987). "This enables us to put the statute in controversy in its proper context and thereby avoid unreasonable or illogical results that defy common sense." *Adamson,* 359 Md. at 252, 753 A.2d 501.

### Discussion

### A.  Statutory Language

Appellants argue that the vehicle was a "private passenger motor vehicle" and thus the plain language of IA § 19–

510 required appellees to obtain an affirmative written waiver if there were to be different liability and UM/UIM limits. At oral argument, appellants referred to Md.Code (1977, 1998 Repl.Vol.), § 11–144.1 of the Transportation Article ("TA"), which defines "passenger car" as "a motor vehicle, except a multipurpose passenger vehicle or motorcycle, designed to carry 10 persons or less." [4] Alternatively, appellants contend that the legislative history supports a finding that the term "private passenger motor" vehicle was to include all vehicles other than "governmental or quasi-governmental" vehicles.

Appellees assert that summary judgment was "appropriate because the statutory basis for the [appellants'] claim, Section 19–510 of the Insurance Article, is inappropriate to the commercial policy at issue in this case." Further, they claim that any ambiguity regarding a distinction between private passenger and commercial lines policies in the context of IA § 19–510 is resolved by the legislative history, which demonstrates the legislature's recognition of a distinction between "private passenger" policies and "commercial" policies.

Uninsured motorist coverage is governed by IA § 19–509(e), which states:

(1) The uninsured motorist coverage contained in a motor vehicle liability insurance policy: [5]

(i) shall at least equal:

1. the amounts required by Title 17 of the Transportation Article; [6] and

---

**4.** *See also* TA § 11–109.1 (defining "commercial motor vehicle"); and IA § 10–601(e) (in regard to insurance provided through motor vehicle rental companies and differentiating between "private passenger" vehicles and cargo vehicles, including specifically "pickup trucks").

**5.** IA § 20–101(h) defines "[m]otor vehicle liability insurance" in reference to the Maryland Automobile Insurance Fund as "insurance coverage that is reported as private passenger auto no-fault, other private passenger auto liability, commercial auto no-fault, or other commercial auto liability[.]"

**6.** TA § 17–103 provides:

2. the coverage provided to a qualified person under Title 20, Subtitle 6 of this article; and

(ii) may not exceed the amount of liability coverage provided under the policy.

(2) **Unless waived in accordance with § 19–510 of this subtitle, the amount of uninsured motorist coverage provided under a private passenger motor vehicle liability insurance policy shall equal the amount of liability coverage provided under the policy.** [Emphasis added.]

IA § 19–510, provides the statutory criteria for waiver of uninsured motorist coverage in an amount equal to the liability coverage of a private passenger motor vehicle liability insurance policy:

(a) *Scope of section.*—This section applies **only** when the liability coverage under **a policy or binder of private passenger motor vehicle liability insurance** exceeds the amount required under § 17–103 of the Transportation Article.

---

(a) *Required form; annual assessment.*—(1) Except as provided in paragraph (2) of this subsection, the form of security required under this subtitle is a vehicle liability insurance policy written by an insurer authorized to write these policies in this State.

(2) The Administration may accept another form of security in place of a vehicle liability insurance policy if it finds that the other form of security adequately provides the benefits required by subsection (b) of this section.

(3) The Administration shall, by regulation, assess each self-insurer an annual sum which may not exceed $750, and which shall be used for actuarial studies and audits to determine financial solvency.

(b) *Required minimum benefits.*—The security required under this subtitle shall provide for at least:

(1) The payment of claims for bodily injury or death arising from an accident of up to $20,000 for any one person and up to $40,000 for any two or more persons, in addition to interest and costs;

(2) The payment of claims for property of others damaged or destroyed in an accident of up to $10,000, in addition to interest and costs;

(3) Unless waived, the benefits described under § 19–505 of the Insurance Article as to basic required primary coverage; and

(4) The benefits required under § 19–509 of the Insurance Article as to required additional coverage.

(b) *In general.*—(1) If the first named insured under a policy or binder of private passenger motor vehicle liability insurance does not wish to obtain uninsured motorist coverage in the same amount as the liability coverage provided under the policy or binder, the first named insured shall make an affirmative written waiver of having uninsured motorist coverage in the same amount as the liability coverage.

(2) If the first named insured does not make an affirmative written waiver under this section, the insurer shall provide uninsured motorist coverage in an amount equal to the amount of the liability coverage provided under the policy or binder.

(c) *Notice required.*—A waiver made under this section is not effective unless, prior to the waiver, the insurer gives the first named insured written notice of the nature, extent, benefit, and cost of the level of the uninsured motorist coverage being waived.

(d) *Form.*—(1) A waiver made under this section shall be made on the form that the Commissioner requires.

(2) The form may be part of the insurance contract.

(3) The form shall clearly and concisely explain in 10 point boldface type:

(i) the nature, extent, benefit, and cost of the level of the uninsured motorist coverage that would be provided under the policy if not waived by the first named insured;

(ii) that a failure of the first named insured to make a waiver requires an insurer to provide uninsured motorist coverage in an amount equal to the amount of the liability coverage provided under the policy or binder of private passenger motor vehicle liability insurance;

(iii) that an insurer may not refuse to underwrite a person because the person refuses to waive the excess uninsured motorist coverage under this section; and

(iv) that a waiver made under this section must be an affirmative written waiver.

(4) Subject to the Commissioner's approval, a waiver made under this section may be made on the same form as the waiver made under § 19–506 [7] of this subtitle.

(e) *Effective period.*—A waiver made under this section by a person that is insured continuously by an insurer or by the Maryland Automobile Insurance Fund is effective until the waiver is withdrawn in writing.

(f) *Refusal to underwrite prohibited.*—(1) An insurer may not refuse to underwrite a person because the person refuses to waive the excess uninsured motorist coverage under this section.

(2) An insurer that violates this subsection is subject to the penalties provided by §§ 4–113 and 4–114 of this article. [Emphasis added.]

IA § 19–510 is directed at a type of insurance policy, rather than the vehicle being insured by that policy. Here, it is undisputed that the pick-up truck was owned by Hams; that the insurance policy covering the vehicle was a commercial lines policy; that the accident occurred while the vehicle was being operated by a Hams' employee for personal, rather than business purposes; and most significantly, for the purposes of this dispute, that appellees did not obtain from Hams a written waiver regarding the difference between the liability and UM/UIM coverage limits. Therefore, the issue is whether the policy sought to be reformed was a policy of "private passenger motor vehicle liability insurance" for the purpose of IA § 19–510. Stated differently, does IA § 19–510 apply to a commercial lines insurance policy?

We find guidance in the statutory treatment of the required coverages for motor vehicle insurance contained in the Insurance Article. For example, IA §§ 19–504,[8]

---

7. IA § 19–506 discusses waivers of personal injury protection ("PIP") coverage.

8. IA § 19–504, "[m]inimum liability coverage required," provides that "[e]ach **motor vehicle liability insurance policy** issued, sold, or deliv-

19–505(a),[9] and 19–512(a) [10] regulate liability coverage, personal injury protection coverage ("PIP"), and collision coverage, respectively. The liability and PIP statutes govern the minimum coverages required for a "motor vehicle liability insurance policy[.]" [11]

---

ered in the State shall provide the minimum liability coverage specified in Title 17 of the Transportation Article." (Emphasis added).

9. IA § 19–505, "[p]ersonal injury protection coverage" provides, in pertinent part:

(a) *Coverage required.*—Unless waived in accordance with § 19–506 of this subtitle, each insurer that issues, sells, or delivers a **motor vehicle liability insurance policy** in the State shall provide coverage for the medical, hospital, and disability benefits described in this section for each of the following individuals:

(1) except for individuals specifically excluded under § 27–606 of this article:

(i) the first named insured, and any family member of the first named insured who resides in the first named insured's household, who is injured in any motor vehicle accident, including an accident that involves an uninsured motor vehicle or a motor vehicle the identity of which cannot be ascertained; and

(ii) any other individual who is injured in a motor vehicle accident while using the insured motor vehicle with the express or implied permission of the named insured;

(2) an individual who is injured in a motor vehicle accident while occupying the insured motor vehicle as a guest or passenger; and

(3) an individual who is injured in a motor vehicle accident that involves the insured motor vehicle:

(i) as a pedestrian; or

(ii) while in, on, or alighting from a vehicle that is operated by animal or muscular power. [Emphasis added.]

10. IA § 19–512, "Collision coverage," states, in pertinent part:

(a) *In general.*—(1) Each insurer that issues, sells, or delivers a **motor vehicle insurance policy** in the State shall offer collision coverage for damage to insured motor vehicles subject to deductibles of $ 50 to $ 250 in $ 50 increments.

(2) Collision coverage shall provide insurance, without regard to fault, against accidental property damage to the insured motor vehicle caused by physical contact of the insured motor vehicle with another motor vehicle or other object or by upset of the insured motor vehicle, if the motor vehicle accident occurs in a state, Canada, or Mexico.

11. TA § 11–135 defines "[m]otor vehicle" as:

(a) *In general.*—"Motor vehicle" means, except as provided in subsection (b) of this section, a vehicle that:

(1) Is self-propelled or propelled by electric power obtained from overhead electrical wires; and

IA §§ 19–504 and 19–505(a). The collision coverage statute applies to a "motor vehicle insurance policy." IA § 19–512(a). These sections generally apply to insurance policies insuring motor vehicles.

IA § 19–509(e) also applies to "motor vehicle liability insurance" policies generally. In contrast, the UM/UIM waiver provision "applies **only** when the liability coverage under a policy or binder of **private passenger** motor vehicle liability insurance exceeds the amount required under § 17–103, [*supra,*] of the Transportation Article." IA § 19–510(a) (emphasis added). The words "private passenger" differentiate the application of this provision from the more general provisions related to liability, PIP, collision and UM/UIM coverage in motor vehicle insurance coverage. Therefore, the language of the statute itself indicates that the waiver provision of IA § 19–510 was not intended to apply to a commercial lines policy.

We have found a differentiation between "private passenger" and "commercial" automobile policies in other provisions of the Insurance Article. In fact, both IA §§ 23–306(b) [12] and 23–307(b) [13] differentiate "private passenger automobile" from

_____

(2) Is not operated on rails.

(b) *Bicycle equipped with assisting motor.*—"Motor vehicle" does not include a bicycle that is equipped with an assisting motor, as described in § 11–134.1 of this subtitle.

**12.** IA § 23–306(b) provides:

A delinquency and collection charge shall be at least $ 1, up to a maximum of 5% of the installment in default, but may not exceed:
(1) $ 5, with respect to **private passenger automobile** or personal fire or liability insurance; and
(2) $ 100, with respect to **commercial automobile,** fire, or liability insurance. [Emphasis added.]

**13.** IA § 23–307(b) provides:

A cancellation charge shall be:
(1) with respect to **private passenger automobile** or personal fire or liability insurance, equal to the difference between a delinquency and collection charge imposed under § 23–306 of this subtitle with respect to the installment in default and $ 10; and
(2) with respect to **commercial automobile,** fire, or liability insurance, 5% of the installment, not to exceed an amount equal to the

"commercial automobile" insurance policies. *See* IA § 20–503(b) and (c).[14]

## B. Legislative History

Assuming that the language of the statute is not free from any ambiguity, we, as did the circuit court, have examined the legislative history of the provisions at issue. Our conclusion regarding the statutory language is consistent with the legislative history of IA § 19–510.

On March 13, and April 1, 1992, the Maryland General Assembly Department of Fiscal Services, Division of Fiscal Research, issued a "Fiscal Note" and "Fiscal Note Revised"

---

difference between a delinquency and collection charge imposed under § 23–306 of this subtitle with respect to the installment in default and $ 100. [Emphasis added.]

14. IA § 20–503 governs the content of insurance policies and provides:
(a) *In general.*—Each policy issued by the Fund shall contain the minimum coverages required under Title 19, Subtitle 5 of this article and may contain other provisions determined by the Executive Director and approved by the Board of Trustees and the Commissioner.
(b) *Required disclosures.*—At the time a policy of **private passenger auto liability insurance** is issued to an applicant, the Fund shall include in the policy a written notice to the applicant that contains the following disclosures:
(1) the time and the conditions under which the applicant is eligible to seek insurance from an Association member;
(2) that if the applicant seeks insurance from an Association member, the Association member may not refuse to underwrite the private passenger auto liability insurance risk solely because the applicant or named insured previously ·obtained insurance from the Fund; and
(3) that if the applicant seeks insurance from an Association member and the Association member refuses to underwrite the applicant solely because the applicant or named insured previously obtained insurance from the Fund, the applicant may file a complaint with the Commissioner against that Association member.
(c) *Additional and excess commercial coverages.*—Whenever the Fund issues a policy of **commercial auto liability insurance** under this subtitle, the Fund:
(1) may provide coverages in addition to and in excess of the minimum coverages required by Title 19, Subtitle 5 of this article and by Title 17 of the Transportation Article; but
(2) is not required to provide coverages in addition to and in excess of the required minimum coverages except to the extent that reinsurance for the additional or excess coverage is available and acceptable to the Fund. [Emphasis added.]

that discussed proposed amendments to Senate Bill ("SB")
767. That bill proposed that "motor vehicle insurers" be
required to increase the amount of uninsured motorist cover-
age to equal the amount of liability coverage provided in the
insurance policy, unless the insured submitted a written re-
quest to reduce the uninsured motorist coverage. Their re-
spective overviews appear to apply to insurance policies in
general. Moreover, the notes refer to the impact of SB 767 on
"private passenger business" and "commercial business." The
April 1, 1992 Note stated:

> Most of [Maryland Automobile Insurance Fund's
> ("MAIF")] private passenger insureds carry only the basic
> mandatory limits of $20,000/$40,000 and $10,000. Therefore
> this bill would have little impact on its private passenger
> business. However, this bill would greatly increase the
> liability limits for MAIF's commercial business, at least
> temporarily until the insured requests a change back to
> basic uninsured motorist coverage limits. The amendment
> that provides for renewal at the same reduced level previ-
> ously requested will affect about 15% of its commercial
> Insureds.[15]

> MAIF points out that in addition to issuing uninsured
> motorist coverage at the level of the bodily injury liability
> limits (unless there is a written request to reduce it),
> uninsured motorist coverage for property damage liability
> would be raised to the level above $10,000 carried by the
> insured. Commercial insureds frequently carry $50,000 to
> $100,000 property damage liability. Approximately 38%
> carry more that $10,000 in property damage liability.

In a subsequent Revised Fiscal Note, dated May 12, 1992,
the phrase "insurance policy," located in the "[o]verview of
[l]egislation," was stricken and replaced by the phrase "a
policy of private passenger motor vehicle insurance." In
addition, references to the impact on "commercial business"
were removed. Accordingly, only an analysis concerning "pri-

---

15. The last sentence was not in the March 13, 1992 Fiscal Note.

vate passenger insureds" remained. The Revised Note read: "Most of MAIF's private passenger insureds carry only the basic mandatory limits of $20,000/40,000 and $10,000. Therefore this bill will have little impact on its private passenger business. The provision for continuing a waiver once made by continuously insured private passenger persons can be handled by MAIF's existing resources."

Therefore, we find nothing in the language of the statute or in the legislative history that persuades us that the General Assembly intended the phrase "policy of private passenger motor vehicle insurance" to relate to insurance on all vehicles except "non-governmental" vehicles. Clearly, the legislature considered applying the uninsured motorist provision to "commercial" as well as "private passenger" policies. In its deliberations, it was made aware of the large "increase" in liability limits, with presumably increased costs, for commercial businesses. By substituting "policy of private passenger motor vehicle insurance" for the term "insurance policy" the General Assembly intended to limit the UM/UIM waiver provision to private lines policies.

Accordingly, based on the language of the statute, as well as the legislative history and the distinctions between "private passenger" and "commercial" insurance polices in other sections of the Insurance Article, we conclude that the circuit court was legally correct in deciding that the waiver provisions contained in IA §§ 19–509 and 19–510 did not apply to the commercial lines policy at issue in this case.

**JUDGMENT AFFIRMED.**

**COSTS PAID BY APPELLANT.**