REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0269

September Term, 2013

JAMES R. THOMAS, JR.

v.

PETER A. BOZICK, JR., ET AL.

Woodward,
Wright,
Thieme, Raymond G., Jr.
    (Retired, Specially Assigned),

JJ.

Opinion by Woodward, J.

Filed: May 28, 2014

On December 31, 2010, James R. Thomas, appellant, retired as the managing member of the architectural firm George, Miles & Buhr, LLC ("GMB"), and of GMB Plaza, LLC ("GMB Plaza"), the latter a limited liability company created for the sole purpose of owning the building in which GMB operates ("the Property"). Upon appellant's retirement, the GMB Plaza Operating Agreement ("Operating Agreement") required appellant to offer to sell his interest in GMB Plaza to GMB Plaza. The remaining members of GMB Plaza were appellees, Peter A. Bozick, Jr., Judith A. Schwartz, individually and as Trustee of the Judith A. Schwartz Revocable Trust, James H. Willey, Jr., and Charles M. O'Donnell.

GMB Plaza declined to purchase appellant's interest after appellees determined that the method for fixing the purchase price for appellant's interest set forth in the Operating Agreement no longer reflected the fair market value of the Property. Appellees also decided to reduce the rent GMB paid for use of the Property, because a September 2010 appraisal showed that the current rental rate was 60% higher than prevailing market rates. After obtaining new appraisals of the Property in June 2011, appellees decided to sell the Property. After selling the Property, GMB Plaza sent appellant a distribution check reflecting his portion of the proceeds from the sale based on his 48% interest in GMB Plaza.

On December 20, 2011, appellant filed a complaint in the Circuit Court for Wicomico County, claiming that appellees breached the Operating Agreement by selling the Property, reducing the rent, and failing to include appellant in meetings and decisions regarding the Property's sale. Appellees moved for summary judgment, which the circuit court granted on March 14, 2013.

Appellant appealed, presenting three issues for our review, which we have condensed into one question:[1] Did the circuit court err in granting appellees' motion for summary judgment? For the reasons set forth below, we answer that question in the negative and affirm the judgment of the circuit court.

## BACKGROUND

Appellant was a member of the architectural firm GMB from 1969 until December 31, 2010 when he retired. GMB has an office located in the Property at 206 West Main

---

[1] Appellant's questions as presented in his brief were:

1. Whether the circuit court erred by granting summary judgment after making numerous, disputed factual findings, including that appellees 1) acted in good faith when they secretly dissolved and bought the [Property] from themselves at a lower price; 2) sold the building for "fair market value" when it was substantially less than previously agreed upon; and 3) did not breach any fiduciary duties owed to the appellant by intentionally lowering the rent of the building to artificially reduce its appraised value, when all of these factual findings were disputed by appellant[.]

2. Whether the circuit court erred when it held, as a matter of law, that 1) appellant ceased being a member of GMB Plaza upon his retirement; and 2) appellant lost all membership rights in GMB Plaza even though his purchase offer for his membership interests was never accepted by appellees[.]

3. Whether the circuit court erred when it held, as a matter of fact and law, that the operating agreement was not breached, when majority members of GMB Plaza intentionally disregarded the buy-sell provisions set forth in their operating agreement, dissolved the entity, formed a new entity, and sold assets to themselves for an artificially low sales price[.]

Street in Salisbury, Maryland. During appellant's tenure with GMB, the Property was owned by GMB Plaza, a limited liability company that was governed by the Operating Agreement. Prior to appellant's retirement on December 31, 2010, appellant and appellees comprised GMB Plaza's members.

Near the end of 2009, appellant announced his plan to retire. At that time, appellant was the managing member of both GMB and GMB Plaza. In preparation for appellant's retirement, on November 1, 2010, GMB Plaza elected Bozick to become the new managing member of GMB Plaza.

On December 31, 2010, appellant retired from GMB. Pursuant to the Operating Agreement of GMB Plaza, appellant's retirement from GMB triggered his involuntary withdrawal from GMB Plaza, and an automatic offer to sell his interest in GMB Plaza to GMB Plaza.[2] GMB Plaza had the option to purchase appellant's interest within sixty days of January 1, 2011. The purchase price of the option was to be determined based upon a formula set forth in the Operating Agreement. As of January 1, 2011, the total value of the Property based on the Operating Agreement's formula was $1,221,671.00.

At a meeting on February 16, 2011 appellees unanimously decided that the $1,221,671.00 value as determined by the Operating Agreement was no longer representative of the fair market value of the Property. The decision was based on two appraisals completed

_____

[2] The Operating Agreement states that a member who is involuntarily withdrawn offers to sell his "Membership Rights." What "Membership Rights" are in fact encompassed under the Operating Agreement is discussed in Section I, *infra*.

3

by The Trice Group, a certified real estate appraisal company, in September 2010 while appellant was still the managing member of GMB Plaza. The Trice Group used two approaches—the sales approach and the income approach—to value the Property. Using the sales approach, The Trice Group valued the Property at $875,000.00; under the income approach, the Property was valued at $760,000.00. As a result of The Trice Group's appraisals, GMB Plaza declined to exercise its right to purchase appellant's interest in GMB Plaza. Appellant was notified of the decision the following day.

The September 2010 income approach appraisal also revealed that the rent GMB had been paying to GMB Plaza for use of the Property was approximately 60% higher than prevailing market rates. Consequently, Bozick, on behalf of GMB, submitted a formal request to GMB Plaza to reduce the rent retroactive to January 1, 2011. On or about February 16, 2011, the members of GMB Plaza unanimously approved the request for a reduction in rent retroactive to January 1, 2011.

In an effort to determine the true value of GMB Plaza, appellees commissioned a second set of appraisals from The Trice Group. The resulting appraisals, dated June 9, 2011 and June 30, 2011, respectively, valued the Property at $830,000.00 using the sales approach, and $700,000.00 using the income approach.

On July 13, 2011, appellees sent appellant a letter with the results of the June 2011 appraisals. The letter offered to purchase appellant's interest based on a property value of $760,000.00, *i.e.* slightly less than the average of the sales approach and income approach

4

values. Appellant rejected the offer in an email dated August 10, 2011

On October 20, 2011, the members of GMB Plaza unanimously voted to dissolve GMB Plaza and sell the Property to a newly formed entity, GMB Properties, for $765,000.00, the average of the June 2011 sales approach and income approach values. GMB Properties was to be composed of appellees plus an additional member of GMB who did not have an interest in GMB Plaza, with each member owning 20% of the interest in GMB Properties.

On October 28, 2011, GMB Plaza notified appellant of its decision to sell the Property to GMB Properties for $765,000.00. Appellant also was informed that settlement of the sale was anticipated to take place between December 1, 2011 and December 15, 2011. Settlement on the sale of the Property to GMB Properties took place on December 14, 2011.

Appellant was informed of GMB Plaza's sale of the Property to GMB Properties on December 20, 2011 via a Liquidation and Dissolution Notice. The Notice included a distribution check for $270,394.60, which appellant later deposited. On December 20, 2011, the same day appellant received the Liquidation and Dissolution Notice, appellant filed a complaint in the circuit court against appellees.[3]

In his amended complaint, filed on August 10, 2012, appellant alleged that appellees

---

[3] On February 3, 2012, appellees filed a Motion to Dismiss or in the Alternative for Summary Judgment and a Memorandum in Support, arguing that appellant's depositing of the check was an accord and satisfaction. The circuit court denied appellees' motion without prejudice on May 4, 2012. Appellees did not file a cross-appeal or conditional cross-appeal from that decision.

5

breached the Operating Agreement.[4]  The breach of contract claim rested on four allegations: (1) that appellees wrongfully failed to give appellant notice of, and to allow appellant to participate in, GMB Plaza meetings after January 1, 2011; (2) that appellees wrongfully changed the method of determining fair market value for the purchase of the Property; (3) that appellees breached their fiduciary duties by lowering the purchase price of the Property and buying it back themselves at the lower price; and (4) that appellees intentionally and artificially decreased the rent in order to also decrease the payout to appellant.

On December 21, 2012, appellees filed a Motion for Summary Judgment and Memorandum of Law in Support Thereof.  On January 8, 2013, appellant filed a response to appellees' motion for summary judgment.  The circuit court held a hearing on the motion on March 14, 2013.  The court orally ruled in favor of appellees at the hearing, and entered

---

[4] The amended complaint also asserted that appellees' engaged in a civil conspiracy to defraud appellant.  The circuit court determined that there was no merit to this claim, stating:

> [A] civil conspiracy is an agreement or understanding between two or more persons to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal.  Here, there is no evidence that [appellees] ever had an understanding to accomplish an illegal act or to use unlawful means to accomplish an act not itself illegal.  In fact, there was no unlawful or illegal act by any of [appellees], whatsoever.  In addition, there is no evidence that [appellees] defrauded [appellant].  There is, quite simply, no factual or legal basis for this [conspiracy] Count.  [Appellees] are correct that there are no disputes of material fact and [appellees] are entitled to judgment as a matter of law as to this Count.

Appellant does not challenge the trial court's determination in this regard on appeal.

6

its written Opinion and Order granting the motion for summary judgment on March 18, 2013.

The Opinion stated that on appellant's retirement, he disassociated himself with GMB Plaza

and thus lost all membership rights in the company. Because appellant did not retain his

membership rights, the court concluded that appellant was not entitled to notice of GMB

Plaza meetings and that appellees could determine the fair market value of the Property

without appellant's consent. The court also decided that there was no genuine dispute as to

the fair market value or the fair rental value of the Property. The court thus concluded that

appellees were entitled to judgment as a matter of law.

Appellant timely filed this appeal of the circuit court's decision. Additional facts will

be set forth below as necessary.

## STANDARD OF REVIEW

"A trial court's grant of a summary judgment motion is proper
if there is no genuine dispute as to any material fact and . . . the party
in whose favor judgment is entered is entitled to judgment as a matter
of law. Maryland courts hold that a material fact is a fact the
resolution of which will somehow affect the outcome of the case.

Once the moving party provides the trial court with a *prima
facie* basis in support of the motion for summary judgment, the
non-moving party is obliged to produce sufficient facts admissible in
evidence, if it can, demonstrating that a genuine dispute as to a
material fact or facts exists. These tendered facts should be given
under oath, based on the personal knowledge of an affiant. Bald,
unsupported statements or conclusions of law are insufficient.

If no genuine dispute of material fact is found to exist, a court
then considers whether the movant is entitled to judgment as a matter
of law. On appellate review of the grant of summary judgment, we
review the trial court's conclusions of law *de novo*. As we consider

7

the trial court's conclusions of law, we construe the facts properly before the court, and any reasonable inferences that may be drawn from them, in the light most favorable to the non-moving party."

*Dolan v. McQuaide*, 215 Md. App. 24, 31 (2013) (alteration in original) (internal citations and quotation marks omitted) (quoting *Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 162 (2004)).

## DISCUSSION

### I. Appellant's Continued Membership in GMB Plaza

Appellant argues that his membership rights in GMB Plaza did not dissolve on December 31, 2010 when he retired. According to appellant, because appellees, through GMB Plaza, did not exercise the option to purchase appellant's interest in GMB Plaza, appellant retained all of his membership rights in GMB Plaza after the sixty-day purchase period expired. In addition, appellant contends that the plain language of the Operating Agreement and relevant sections of the Corporations and Associations Article of the Maryland Code require that appellant retain his right to vote and participate in the management of GMB Plaza as a result of the failure to purchase appellant's interest in GMB Plaza.

Appellees counter that appellant was not a member of GMB Plaza after his retirement on December 31, 2010, and thus did not retain any membership rights.[5] According

---

[5] Appellees argue that appellant is judicially estopped from contending that his membership rights in GMB Plaza continued after GMB Plaza declined to exercise its option
(continued...)

8

to purchase, because he acknowledged, in his response to appellees' motion to dismiss, that his membership in GMB and GMB Plaza was lost upon retirement. In response to appellees' motion to dismiss, appellant stated: "Upon [appellant's] retirement, *[appellant] lost his membership status and became an assignee of his 48% membership interest without a right to participate in voting or management of the entity upon his retirement*." In response to appellees' motion for summary judgment, however, appellant argued:

> It is [appellant's] position that the Operating Agreement of GMB Plaza [ ] mandates that, upon leaving the employ of GMB, he make an Involuntary Withdrawal Offer to sell his Membership Rights to the Company which, if accepted, would divest him of his economic interest in the company as well as his right to vote, participate in management and inspect the Company's books and records. However, **if the Company elects not to accept his Withdrawal Offer that interest and those rights remain vested in him**.

On appeal, appellant continues to assert that his membership rights remained vested in him once GMB Plaza declined his offer to sell.

Although appellant has asserted inconsistent positions regarding his membership status in GMB Plaza, judicial estoppel is inappropriate in the present case. First, judicial estoppel only applies to a position taken in a *subsequent* action that is inconsistent with a position taken in a *previous* action. *See Dashiell v. Meeks*, 396 Md. 149, 170 (2006). Second, "'the party sought to be estopped must assert a position inconsistent with that taken in prior litigation and *the position must be one of fact rather than law or legal theory*.'" *Vogel v. Touhey*, 151 Md. App. 682, 711 (emphasis added) (quoting *Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998)), *cert. denied*, 378 Md. 617 (2003). Because appellant's status as a member of GMB Plaza after January 1, 2011, is a legal question requiring us to interpret the Operating Agreement and the Corporations and Associations Article of the Maryland Code, and because the inconsistent positions arose in the same action, judicial estoppel may not be applied to the case *sub judice*.

Appellant also did not waive on appeal his right to assert that his membership in GMB Plaza continued after his retirement, despite his inconsistent positions in the trial court. "In the appellate setting, the general waiver rule holds that 'a voluntary act of a party which is inconsistent with the assignment of errors on appeal normally precludes that party from obtaining appellate review.'" *Brockington v. Grimstead*, 176 Md. App. 327, 351 (2007) (quoting *Franzen v. Dubinok*, 290 Md. 65, 69 (1981)), *aff'd*, 417 Md. 332 (2010). The Court

(continued...)

to appellees, they did not owe appellant any legal or contractual duty to include him in or notify him of management decisions, because under the language of the Operating Agreement and the Corporations and Associations Article of the Maryland Code, appellant's membership in GMB Plaza ceased upon his retirement and his status became one of an assignee of an economic interest. Appellees also argue that it would be illogical for appellant's non-economic rights in GMB Plaza to be lost on retirement and then reinstated at the end of the sixty-day option to purchase period if the option was not exercised.

When a member of GMB Plaza ceases to be an employee of GMB, such as when that member retires, Section I of the Operating Agreement defines the end of employment with GMB as an "involuntary withdrawal" of the member from GMB Plaza. Section 6.3 of the Operating Agreement makes clear that such withdrawal is involuntary, because "[n]o Member [of GMB Plaza] shall have the right or power to voluntarily withdraw from the Company." Appellant's retirement from GMB thus caused him to involuntarily withdraw as a member from GMB Plaza.

A member's involuntary withdrawal triggers Section 6.5 of the Operating Agreement—"Option to Purchase in Event of Involuntary Withdrawal Other than Death."

_____

[5](...continued)
of Appeals, however, stated that "waiver by acquiescence is limited to a party's *post*-judgment conduct." *Exxon Mobil Corp. v. Ford*, 433 Md. 426, 463 (2013). Because appellant's inconsistent positions were taken *during* the course of the trial proceeding, not post-judgment, appellant did not waive his right to assert that he continues to be a member of GMB Plaza.

Section 6.5 reads:

> In the event of an Involuntary Withdrawal of a Member for any reason other than the Member's death, **the withdrawn member shall be deemed to have offered to sell to the Company all of the Membership Rights owned of record and beneficially by the withdrawn Member** (the "Withdrawal Interest") **at and for the Purchase Price determined in accordance with Section 6.6** and on the Payment Terms set forth in Section 6.7. **The Withdrawal Offer shall [ ] remain open for a period of sixty (60) days following the date of the Involuntary Withdrawal**. At any time during this period, the company may accept the Withdrawal Offer by notifying the withdrawn Member of its acceptance. The withdrawn Member shall not be deemed a Member or manager for the purpose of the vote on whether the Company will accept the Withdrawal Offer. If the Company accepts the Withdrawal Offer, the notice of acceptance shall fix a closing date for the purchase which shall not be not [sic] earlier than ten (10) days or later than one hundred eighty (180) days after the expiration of the Withdrawal Period.

(Emphasis added).

Because the Operating Agreement is silent on what happened in the instant case, namely GMB Plaza elected not to exercise the option to purchase, we turn to the Maryland Limited Liability Company Act to fill in the gap. Under Maryland Code (1975, 2007 Repl. Vol., 2013 Cum. Supp.), § 4A-606(2) of the Corporations and Associations Article ("C.A."), a person ceases to be a member of a limited liability company, such as GMB Plaza, when that person is removed as a member in accordance with the company's operating agreement. When a person is removed, the company may, but is not required to purchase that person's membership interest. C.A. § 4A-606.1(a). Pursuant to C.A. § 4A-606.1(b),

> **[i]f** a person ceases to be a member of a limited liability company under § 4A-606 of this subtitle and **the limited liability company**

11

**elects not to completely liquidate the person's membership interest** under § 4A-606.1(a) of this subtitle, **that person will be deemed to be an assignee of the unredeemed economic interest** under §§ 4A-603 and 4A-604 of this subtitle.

(Emphasis added).

An assignee is not a member of the limited liability company, and may not exercise any of the rights of a member. C.A. § 4A-603(b)(2). An assignee may become a member only if (1) the terms of the operating agreement provide a method for that person to become a member, (2) the current members unanimously consent to the assignee becoming a member, or (3) there are no remaining members of the limited liability company when the assignee obtains the economic interest. C.A. § 4A-604(a).

Combining the Operating Agreement and C.A. § 4A-606, we conclude that appellant's retirement from GMB caused him to cease being a member of GMB Plaza. His retirement gave GMB Plaza the option to purchase appellant's membership interest in accordance with the Operating Agreement and C.A. § 4A-606.1(a). When GMB Plaza declined to exercise its purchase option, however, appellant became an assignee of the unredeemed economic interest pursuant to C.A. § 4A-606.1(b). As an assignee, appellant was divested of his membership status in GMB Plaza, unless (1) the Operating Agreement contained a method for assignees to become members, (2) the members of GMB Plaza unanimously voted to make appellant a member again, or (3) no members of GMB Plaza remained. *See* C.A. §§ 4A-603(b)(2), 4A-604(a). Because none of these conditions occurred, appellant was only an assignee of his unredeemed economic interest and not a member of GMB Plaza after his

12

retirement on December 31, 2010.

Appellant contends, however, that, because Section 6.5 of the Operating Agreement required that he offer to sell his "Membership Rights" to GMB Plaza upon his retirement, and "Membership Rights" under Section I of the Operating Agreement expressly included the "right to participate in the management of and vote on matters coming before [GMB Plaza]," he necessarily had to own and retain those voting and participation rights at the time of the offer and could not have been divested those rights. In our view, for appellant to have retained his membership rights, appellant was required to be a member of GMB Plaza.[6] C.A. § 4A-101(m) defines a member of an LLC as "a person who has been admitted as a member of a limited liability company under [C.A.] § 4A-601 . . . and *who has not ceased to be a member*." (Emphasis added). Under the Operating Agreement, appellant involuntarily withdrew as a member of GMB Plaza when he "cease[d] to be an employee of [GMB]." When he withdrew as a member of GMB Plaza because of his retirement from GMB, appellant "ceased to be a member" of GMB Plaza and thus lost his membership rights, including the right to participate in the management of and to vote on company matters. The only membership interest appellant retained after his retirement and involuntary withdrawal was his economic interest, which GMB Plaza had the option to purchase. *See* C.A. §§ 4A-603(b)(2), 4A-606.1(b).

---

[6] "Membership Rights" as defined in the Operating Agreement include "all of the rights of a *Member* in [GMB Plaza]. . . ." (Emphasis added).

13

Moreover, section 6.5 required appellant to sell "all of the Membership Rights *owned of record and beneficially by the withdrawn Member . . . at and for the Purchase Price determined in accordance with Section 6.6 . . . .*" (Emphasis added). Section 6.6, entitled "Purchase Price" provides, in relevant part, that

> [u]nless otherwise agreed by the parties to the transaction, the **price to be paid for the purchase and sale of a Member's Interest**, in part or in whole, ("Purchase Price") shall be equal to the product obtained by multiplying (a) the Percentage Interest and Membership Rights owned by the Transferor by (b) the "Fair market Value of [GMB Plaza's] Assets" as determined in accordance with Section 6.6.2.

(Emphasis added). Therefore, when Sections 6.5 and 6.6 are read together, it is clear that the "Membership Rights owned of record and beneficially by the withdrawn Member" refer only to appellant's "Interest" in GMB Plaza, which is defined in Section I as his "share of the Profits and Losses of, and the right to receive distributions from, [GMB Plaza]."[7]

Appellant also argues that C.A. § 4A-606.1, which outlines the basic procedures for purchasing or not purchasing a former LLC member's economic interest, does not apply when an operating agreement sets forth different procedures than the statute, because the

_____

[7] Our interpretation of Sections 6.5 and 6.6 is consistent with Section 6.4, entitled "Mandatory Purchase in Event of Death." Using the same language as in Section 6.5, Section 6.4 requires GMB Plaza to purchase "all of the Membership Rights owned of record and beneficially by the Deceased Member . . . at and for the Purchase Price determined in accordance with Section 6.6 . . . ." It is physically impossible for any deceased Member of GMB Plaza to exercise the membership rights of voting and participation claimed by appellant to be part of the "Membership Rights" subject to sale to GMB Plaza upon involuntary withdrawal. Again, Section 6.6 provides for only the purchase and sale "of a Member's Interest."

14

statute is simply a "default provision." Appellant contends that, because the Operating Agreement "does not mandate that a member divest or abandon his membership rights upon retirement," appellant continued to own all of his membership rights when GMB Plaza declined to purchase his interest in GMB Plaza. Appellees counter:

> This is illogical and defies both C.A. § 4A-604 and the Operating Agreement. **The Operating Agreement does not contain any provision providing for a withdrawn member to leap back into membership status after the 60-day purchase option period expires.** If this were the intended result, then there would not be an automatic and involuntary withdrawal upon a member's ceased employment at GMB. Rather, there would be some sort of 60-day option window in which the company could elect to buy the retired member's interest and the retired member would continue to be a member until his interest was purchased. **No provision allows the withdrawn member to become a member again after the 60-day option period expires.**

(Emphasis added). We agree with appellees.

C.A. § 4A-606.1 reads in full:

> (a) *Liquidation of interest.*—**Unless otherwise agreed**, if a person ceases to be a member of a limited liability company under § 4A-606 of this subtitle, and the limited liability company is not dissolved as a result, then, within a reasonable time after the person ceased to be a member, **the limited liability company may elect to pay the person or the person's successor in interest, in complete liquidation of the person's membership interest, the fair value of the person's economic interest** in the limited liability company as of the date the person ceased to be a member, based upon the person's right to share in distributions from the limited liability company.

> (b) *Assignation of interest.*—**If a person ceases to be a member** of a limited liability company under § 4A-606 of this subtitle **and the limited liability company elects not to completely liquidate the person's membership interest under § 4A-606.1(a) of this subtitle,**

15

**that person will be deemed to be an assignee of the unredeemed economic interest** under §§ 4A-603 and 4A-604 of this subtitle.

(Emphasis added).

First, contrary to appellant's assertion, the Operating Agreement supersedes only C.A. § 4A-606.1(a)—the provision which applies when the LLC *elects to purchase* the withdrawn member's economic interest. The plain language of the statute provides that the Operating Agreement does *not* supersede C.A. § 4A-606.1(b)—the provision that applies when the LLC *declines to purchase* the withdrawn member's economic interest.

Second, even if the Operating Agreement could supersede the provisions of C.A. § 4A-606.1(b), the Operating Agreement has no provision that allows for appellant to rejoin GMB Plaza instead of remaining an assignee of an economic interest at the expiration of the sixty-day option to purchase. Without a provision in the Operating Agreement to supersede C.A. § 4A-606.1(b), the statutory requirements apply. Consequently, pursuant to C.A. § 4A-606.1(b) appellant's retirement and GMB Plaza's decision not to purchase appellant's economic interest in GMB Plaza caused appellant to become an assignee of the unredeemed economic interest without any other membership rights.

In sum, appellant's membership in GMB Plaza ended upon his retirement, and only his economic interest in GMB Plaza, of which he was an assignee, remained. As an assignee, appellant could not partake in the management of GMB Plaza or vote on company matters. He was not entitled to notice of meetings of GMB Plaza, nor could he participate in the decision to sell the Property or decide on the Property's fair market value. The circuit court

16

did not err in reaching this conclusion.

## II. Reduced Rent

Appellant contends that appellees breached the Operating Agreement by decreasing the rent charged to GMB for use of the Property, because the rent reduction was designed to decrease the Property's appraised value under the income approach. According to appellant, appellees intended to defraud appellant by "secretly lowering the rent to obtain an artificially low price" from which the payout to appellant would be less than previously agreed.

Appellees respond that the circuit court properly granted summary judgment regarding the reduced rent paid by GMB to GMB Plaza, "because [1] no provision in the Operating Agreement was implicated by the reduction in rent; and because . . . [2] [a]ppellant offered nothing to refute [a]ppellees' expert evidence that the reduced rent was at a market rate." Appellees also contend that the Operating Agreement permitted the managing member to set the rent and thus the reduction in rent did not violate the Operating Agreement.

In their Motion for Summary Judgment, appellees submitted as evidence two appraisals of the Property performed in June 2011, and Bozick's sworn affidavit regarding the September 2010 appraisals. Bozick's affidavit stated that he had submitted on behalf of GMB a formal request for rent reduction to GMB Plaza based on the September 2010 appraisal, which was completed while appellant was still the managing member of GMB Plaza. The September 2010 appraisal revealed that GMB's rental payments to GMB Plaza were approximately 60% higher than prevailing market rates.

17

Appellant, on the other hand, presented no evidence in his response to appellees' motion for summary judgment to demonstrate that the reduction in rent was not reflective of prevailing market rates or somehow in violation of the Operating Agreement. Appellant also failed to present any factual basis on which to support his assertion that the rent reduction was completed in order to defraud appellant and reduce the value of the Property under the income approach. Indeed, in his brief before this Court, appellant pointed only to his Amended Complaint and his argument at the summary judgment hearing as evidence of disputed material facts.[8]

A response to a motion for summary judgment must be supported by evidence that would be admissible at trial. *Injured Workers' Ins. Fund v. Orient Express Delivery Serv., Inc.*, 190 Md. App. 438, 452 (2010). "'Neither general allegations of facts in dispute nor a mere scintilla of evidence will suffice to support the non-movant's position; there must be evidence upon which the jury could reasonably find for the moving party.'" *Hams of S. Md., Inc. v. Nationwide Mut. Ins. Co.*, 148 Md. App. 534, 539 (2002) (quoting *Fearnow v.*

---

[8] Appellant once referenced his answers to interrogatories to support his claim that the rental rate had been artificially depressed. Although answers to interrogatories may be sufficient to generate a genuine dispute of material fact, in the instant case they do not rise to the necessary level to create that genuine dispute. *See Bradley v. Fisher*, 113 Md. App. 603, 610 (1997) (citing *Lowman v. Consol. Rail Corp.*, 68 Md. App. 64, 70 (1986)). First, appellant did not attach his answers to interrogatories to his response to appellees' motion for summary judgment. Second, even if the answers to interrogatories were before the circuit court, appellant's answers presented only the same assertions appellant set forth in his complaint without supporting facts, and thus the interrogatories could not have altered the trial court's grant of summary judgment.

*Chesapeake & Potomac Tel. Co.*, 104 Md. App. 1, 49 (1995)). Resisting a motion for summary judgment based solely on allegations contained in the complaint will be insufficient to create a dispute as to a material fact. *Chantel Assocs. v. Mount Vernon Fire Ins. Co.*, 338 Md. 131, 149-50 (1995).

Appellant's assertions, without supporting facts that would be admissible into evidence, did not rise to the level of creating a material dispute regarding the lowered rental price of the Property. Moreover, appellant's allegations of fraud, bad faith, and breach of fiduciary duty regarding the reduction of the rent do not create a triable issue of fact in the absence of any admissible facts that permit the inference of fraud, bad faith, or breach of fiduciary duty.

The undisputed evidence before the circuit court in the form of Bozick's affidavit and the June 2011 appraisals demonstrated that the market rental value of the Property was much lower than what GMB had been paying to GMB Plaza, even while appellant was the managing member of both GMB and GMB Plaza. As the circuit court stated in its Opinion and Order:

> There is, quite simply, no evidence whatsoever of anything improper about the reduction of the rent. To the contrary, the reduced rent was reasonable given the market and the prior rent was inflated. This is established, without dispute, by the Trice Group's September 2010 appraisal.

Because appellant offered no admissible evidence to the contrary, the circuit court correctly determined that the lowered rate was not a disputed material fact and that the rent reduction

was appropriate.[9]

### III. Fair Market Value and Sale of the Property

Appellant argues that the fair market value of the Property was a disputed material fact. According to appellant, appellees breached the Operating Agreement by "disregard[ing] the previously agreed upon formula to determine fair market value," and by using a new formula to determine the Property's value that was based on the inappropriately reduced rental rate. Appellant contends that, if the method appellees used to calculate the fair market value could be construed as "reasonable," as the circuit court concluded, then appellees could set any price for the Property without appellant's input, which clearly would violate the Operating Agreement and the fiduciary duties appellees owed to appellant. Appellant concludes that the lowered Property value "defraud[ed] [him] out of his fair share of the value of the [P]roperty."

Appellees respond that the circuit court correctly determined that the Operating Agreement permitted appellees to sell the Property, and that the fair market value was not a disputed fact. According to appellees, appellant failed to produce any evidence in response to the motion for summary judgment to support his claim that the Property was sold for less

___

[9] In a footnote in his brief to this Court, appellant stated that the reduction of rent was made "despite an existing written long term lease." Because no such lease was made part of the record in the instant case, we are unable to assess the propriety of the reduction of the rent under the terms of such lease. Moreover, in his affidavit, Bozick stated that (1) "the lease between GMB and GMB Plaza in effect at the time contemplated amendments of terms by mutual agreement of the parties," (2) the reduction in rent "was unanimously approved by the members of GMB Plaza and accepted by GMB," and (3) GMB Plaza and GMB "negotiated and agreed to various rent reductions and increases over the years."

than fair market value. Appellees contend that their determination of the Property's value based on the two appraisals was legally sufficient to demonstrate that they operated in good faith, and appellant's reliance on the purchase option price in the Operating Agreement as a method of proof of fair market value was insufficient, especially without expert testimony.

The "previously agreed upon formula to determine fair market value" that appellant contends should have been applied in determining the price of the Property is set forth in Section 6.6 of the Operating Agreement and existed only to calculate the amount GMB Plaza would have paid if it decided to exercise the option to purchase appellant's interest under Section 6.5.[10] GMB Plaza did *not* exercise its option to purchase appellant's interest, and thus the "previously agreed upon formula" was not applicable to determining the fair market value of the Property after the option to purchase expired.[11]

Instead, as the circuit court stated: "When the remaining members rejected the option, they had the right under the Operating Agreement to (1) sell the building and (2) set the price." Under Section 5.1.3 of the Operating Agreement, "Extraordinary Transactions,"

---

[10] Under Section 6.5, appellant is deemed to have offered to sell his interest in GMB Plaza "at and for the Purchase Price determined in accordance with Section 6.6 and on the Payment Terms set forth in Section 6.7."

[11] At oral argument before this Court, appellant claimed, for the first time, that appellees breached the Operating Agreement by failing to follow the procedure for determining the "Agreed Value" of the Property set forth in Section 6.6.3. Because Section 6.6 (and thus Section 6.6.3) establishes the procedure for determining the purchase price of a Member's Interest in the event that GMB Plaza exercises the option to purchase set forth in Section 6.5, such procedure is inapplicable to the situation presented in the instant case where GMB Plaza declined to exercise the option to purchase under Section 6.5.

21

members of GMB Plaza may conduct "Capital Transactions," which include the sale of the Property. Section 4.5.2 allows distributions to interest holders of GMB Plaza, and states that "[u]nless the Members otherwise agree, the fair market value of the assets shall be determined by an independent appraiser who shall be selected by the Members." Appellees were thus operating within the bounds of the Operating Agreement when they sold the Property, and when they asked The Trice Group, an independent appraiser, to determine the present fair market value of the Property.

Appellant contends, nevertheless, that the method appellees used to determine the Property's fair market value, namely, averaging the appraisal amounts from the sales approach and income approach, was unreasonable. As noted above, at the hearing on the motion for summary judgment, appellees presented Bozick's affidavit and the two June 2011 appraisals as evidence of the Property's fair market value. The appraisals submitted to the circuit court demonstrated that, as of June 2011, the sales approach valued the Property at $830,000.00, and the income approach valued the Property at $700,000.00. Appellees eventually sold the Property to GMB Properties for the average value of the two approaches, at $765,000.00.

"The moving party is always required 'to support his [or her] various contentions by placing before the court facts that would be admissible in evidence or otherwise detailing the absence of evidence in the record to support a cause of action.'" *Washington Mut. Bank v. Homan*, 186 Md. App. 372, 390 (2009) (alteration in original) (quoting *Bond v. Nibco, Inc.*,

96 Md. App. 127, 134 (1993)). "To meet his burden, the movant must identify portions of the record that demonstrate absence of a genuine issue of material fact." *Nerenberg v. RICA of S. Md.*, 131 Md. App. 646, 660, *cert. denied*, 360 Md. 275 (2000). Appellees presented sufficient evidence to meet this initial burden via the two June 2011 appraisals and Bozick's affidavit demonstrating that the Property's fair market value was somewhere between $700,000.00 and $830,000.00.

"Once the movant makes his showing, the burden shifts to the nonmoving party to 'identify with particularity the material facts that are disputed.'" *Id.* (quoting Md. Rule 2-501(b) (1991)). As discussed above, general allegations and reference to the complaint are insufficient for the non-moving party to meet this burden. *See Hams of S. Md., Inc.*, 148 Md. App. at 539; *Chantel Assocs.*, 338 Md. at 149-50.

Having determined that the formula in Section 6.6 of the Operating Agreement does not apply to the instant matter, and that appellant did not retain the right to participate in the management of GMB Plaza after his retirement from GMB, appellant's only remaining "evidence" that $765,000.00 was not the fair market value of the Property was that the sale price was based on an inappropriately reduced rental rate. As we discussed in Section II, *supra*, however, appellees reduced the rental value based on an appraisal stating that the rental price was 60% higher than prevailing market rates. Appellant adduced no admissible evidence to dispute such appraisal or the resulting rental rate.

Based on the evidence presented to it, the circuit court concluded:

23

[A]ll actions of the [appellees] with regard to the sale were reasonable. They obtained good faith appraisals from an independent appraiser, utilizing two different methods of calculation. They then averaged the two appraisals to arrive at a price. **The only, and undisputed evidence before this Court, is that the price for which the building was sold represented fair market value.**

Because appellees presented credible, admissible evidence that $765,000.00 was the fair market value of the Property and appellant produced no evidence to the contrary, the circuit court properly determined that no genuine dispute existed concerning the sale of the Property, and properly granted appellees' motion for summary judgment.

**JUDGMENT OF THE CIRCUIT COURT FOR WICOMICO COUNTY AFFIRMED; APPELLANT TO PAY COSTS.**

24